NO. 12-00-00369-CR



IN THE COURT OF APPEALS


TWELFTH COURT OF APPEALS DISTRICT


TYLER, TEXAS


 KEVIN BURCH, § APPEAL FROM THE 145TH

APPELLANT



 § JUDICIAL DISTRICT COURT OF 



THE STATE OF TEXAS,

APPELLEE § NACOGDOCHES COUNTY, TEXAS






PER CURIAM

 Kevin Burch ("Appellant") appeals his conviction of aggravated robbery for which he was
sentenced to twenty years of confinement. Appellant raises one issue on appeal. We affirm.


Background

 On the morning of February 25, 2000, Mike Halpin ("Halpin"), store manager of Wal-Mart
in Nacogdoches, Texas, was investigating a problem with the store's automated north entrance. As
he reentered the store, he noticed Appellant, who was pushing a shopping cart with a television on
it toward the exit. Halpin watched nearby as another Wal-Mart employee asked Appellant for his
receipt. Appellant, unable to produce a receipt for the television set, walked away from Halpin and
the other Wal-Mart employee southward toward the service desk. Halpin walked outside through
the north entrance and walked the length of the store's facade to the south entrance. When Halpin
reached the south entrance, he again met Appellant, who was exiting the store. Halpin inquired of
Appellant whether he intended to leave the television he had purportedly purchased and asked him
to step back inside the store. Appellant pushed Halpin to the ground and a scuffle ensued. Appellant
got away from Halpin and fled toward his vehicle in the parking lot. (1) Halpin followed Appellant to
his vehicle. 

 At this time, several Wal-Mart employees, including Brian Whited ("Whited"), who had been 
alerted as to the scuffle, hurriedly made their way to the parking lot. Appellant was in his vehicle
with the door locked. Halpin was outside of Appellant's vehicle and was asking Appellant to come
back inside the store. Whited and the other Wal-Mart employees surrounded Appellant's vehicle
in order to prevent Appellant from escaping. As Whited approached the front of Appellant's vehicle,
Appellant started the car and rapidly accelerated, striking Whited, who after hitting the hood,
somersaulted to the pavement, landing on his shoulder and head. Appellant sped through the parking
lot, against oncoming traffic at a high rate of speed. Whited was taken by ambulance to a local
hospital where he was treated for minor injuries.

 At trial, the State of Texas (the "State") offered testimony from three witnesses, Halpin,
Whited, and Lieutenant Greg Johnson of the Criminal Investigation Division of the Nacogdoches
Police Department ("Lieutenant Johnson"). Appellant's counsel cross-examined Halpin and Whited,
and rested following the close of the State's case-in-chief.


Refusal to Charge Jury Regarding Lesser-Included Offense

 Appellant contends that the trial court erred by refusing to instruct the jury in the court's
charge on the lesser-included offense of robbery. It is error for a trial judge to refuse to submit a
charge on a lesser included offense when: (1) the lesser included offense is included within the proof
necessary to establish the offense charged, and (2) there is some evidence in the record that would
permit a jury rationally to find that if the defendant is guilty he is guilty only of the lesser offense. 
Willis v. State, 936 S.W.2d 302, 307 (Tex. App.- Tyler 1996, writ ref'd), citing Rousseau v. State,
855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). The standard of review of the second prong of
the test set out in Rousseau requires that there be only "some evidence" establishing the lesser-included offense. See Willis, 936 S.W.2d at 307. Anything more than a scintilla of evidence from
any source is sufficient to entitle a defendant to submission of the issue. Schweinle v. State, 915
S.W.2d 17, 18 (Tex. Crim. App. 1996). A reviewing court must look to all the evidence to
determine whether any scenario presented will support the requested charge, since the "jury may
accept or reject all or a part of any witness's testimony, including that of the defendant." See Willis,
936 S.W.2d at 307-08, citing Merchant v. State, 810 S.W.2d 305, 309 (Tex. App.- Dallas 1991, writ
ref'd). Witness's statements "cannot be plucked out of the record and examined in a vacuum." 
Ramos v. State, 865 S.W.2d 463 (Tex. Crim. App. 1993), quoting Godsey v. State, 719 S.W.2d 578,
584 (Tex. Crim. App. 1986). Evidence supporting the inclusion of a lesser included offense must
either affirmatively refute or negate an element establishing the greater offense, or the evidence must
be subject to two different interpretations and one of the interpretations must negate or rebut an
element of the greater offense. See Schweinle, 915 S.W.2d at 19, citing Saunders v. State, 840
S.W.2d 390 (Tex. Crim. App. 1992). 

 In the case at hand, the State concedes that robbery is a lesser included offense of aggravated
robbery. Thus, the issue becomes whether there is any evidence of record or interpretation of
evidence of record that either affirmatively refutes or negates an element of aggravated robbery that
distinguishes it from ordinary robbery. The only element distinguishing robbery from aggravated
robbery is that aggravated robbery requires that the defendant, during the commission of robbery,
use or exhibit a deadly weapon, which is anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury. See Tex. Pen. Code §§ 29.03(a), 1.07(a)(17).
Lieutenant Johnson testified that it is possible for an automobile to cause serious bodily injury or
death to an individual fairly easily. Lieutenant Johnson further testified that if an automobile drives
out of a parking lot at a high rate of speed, if there were people in the area, it would be possible for
that vehicle to seriously injure or kill such people.

 Appellant contends that the following testimony given by Whited in previous proceedings
(Whited's "prior testimony") rebuts the element of use or exhibition of a deadly weapon:


 Q: How far was the car pulled out of the parking space before it struck you?


 A: It wasn't pulled out of the parking space at all.

On cross-examination, Appellant's attorney attempted to impeach Whited with his prior testimony
as follows:


 Q: All right. I want to ask you some questions about the position of the car when it -
when you made contact with it.


 A: Okay.


 Q: Do you understand? It was still in it's parking space.


 A: No. When I made contact with it he was leaving the scene. He was - the car was
moving.


 Appellant apparently contends that the potential interpretation of Whited's prior testimony
is that Appellant's vehicle had not driven out of the parking space at all, and thus, was not moving
at a high rate of speed immediately before it struck Whited. However, considering the difference
in the wording of the question posed to Whited by Appellant's counsel on cross-examination as
opposed to the wording of the question posed to Whited in the previous proceedings, we must first
determine whether Whited's prior testimony, given all evidence of record, is reasonably subject to
Appellant's proposed interpretation. See Schweinle, 915 S.W.2d at 19. If we determine that the
evidence is subject to Appellant's interpretation, the question then becomes whether such an
interpretation rebuts or negates evidence offered in support of the greater offense. 

 After testifying that the car accelerated out of the parking space and struck him, Whited
further testified on direct examination:


 Q: Okay. Specifically, where were you when the car hit you?


 A: As far as in relation to the parking lot?


 Q: Yes.


 A: I was probably in the middle of the drive, getting ready, you know, to come around
the car to assist Mike.


. . .


 Q: How fast did the car begin coming towards you?


 A: He - very fast. Very fast is [how he] came toward me.


. . .


 Q: Okay, what happened next:

 

 A: Basically, I heard the sound of his car screeching away . . . 


 Q: Did you actually hear noise from the tires of the car -


 A: Oh, yeah. Yes.


 Q: - on the pavement:


 A: Yes, I did.


 Q: He was moving that quickly?


 A: Oh, yeah.


Whited's testimony was supported by the testimony offered by Halpin, who testified:


 A: And everybody - some people came in behind the car and some people came up in
front of the car. And Brian was out in front of the car. 


 Q: What happened?


 A: Well, the individual turned the car on and put it in gear and took off about as quick
as he could. And Brian unfortunately was - ended up half the direction the car was
going, and he hit - and he was hit, struck by the car.


 Q: Do you recall exactly what Brian did as the car was coming towards him?


 A: Well, it was kind of slow motion as you think of these things that happened in your
mind. There was a number of people around Brian. I mean, he wasn't the only
person there. There was a lot of people there . . . 


 Q: You said there were a lot of people around. Would it have been difficult for that
car to have hit anybody else?


 A: No. It - I'm surprised it didn't, it really didn't hit more people, the way it turned
out.


 Q: How quickly did the defendant pull out of the parking spot?


 A: It was rather quickly. I don't remember if he burned rubber or anything like that. 
I mean, it was - it was in a big hurry. As a matter of fact, as he was - after he hit
Brian he continued to proceed in the wrong direction. And there was a car coming
up, and he quickly went to the left. And how he missed the light pole - there's a
light pole right there. He missed it, and then sped on out the parking lot real quick.


 Given the foregoing testimony and all other evidence of record, we conclude that even if the
evidence did support Appellant's proposed interpretation of Whited's prior testimony, such an
interpretation does not negate or rebut an element of the greater offense. Even if we assume that
Appellant's car was still in the parking space before it struck Whited, such a fact would not refute
or negate other evidence that Appellant struck Whited with his vehicle after accelerating quickly
from that parking space. Therefore, we hold that there was no evidence amounting to more than a
scintilla, which was capable of establishing that if Appellant was guilty, he was guilty only of the
lesser-included offense of robbery. Appellant's issue is overruled.

 Accordingly, the judgment of the trial court is affirmed.


Opinion delivered July 25, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.


















(DO NOT PUBLISH)
1. Halpin's testimony reflects that Appellant's vehicle was backed into a parking space facing the wrong
direction. As explained further by Halpin, the spaces in the parking lot were at angles so that cars traveling a certain
direction could drive into the space with the rear of the vehicle facing the driveway. As Appellant's vehicle was
backed into one of these spaces, the front of Appellant's vehicle was angled in the direction of oncoming parking lot
traffic.